[ORAL ARGUMENT NOT YET SCHEDULED]
No. 22-5095

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CITCUIT

_____

CENTER FOR BIOLOGICAL DIVERSITY,
FRIENDS OF THE EARTH, and
CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW,

*Plaintiffs/Appellants*

v.

UNITED STATES INTERNATIONAL
DEVELOPMENT FINANCE COROPORATION

*Defendant/Appellee*.

On Appeal from the United States District Court
For the District of Columbia

_____

**OPENING BRIEF OF PLAINTIFFS/APPELLANTS**

_____

William J. Snape, III
American University Law School
Center for Biological Diversity
4300 Nebraska Ave, NW
Washington, D.C. 20016
Telephone: (202) 536-9351
wsnape@wcl.american.edu

Margaret A. Coulter
Center for Biological Diversity
1411 K Street, NW
Washington, D.C. 20005
Telephone: (202) 961-4820
mcoulter@biologicaldiversity.org

*Attorneys for Plaintiffs/Appellants*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiffs/Appellants certify as follows: Plaintiff/Appellant the Center for Biological Diversity is a non-profit corporation under the laws of California, registered with the Internal Revenue Service as a 501(c)(3) organization. Plaintiff/Appellant Friends of the Earth U.S. is a tax exempt, nonprofit environmental organization headquartered in Washington, D.C., and is a part of Friends of the Earth International, a federation of grassroots groups working in 76 countries around the world. Friends of the Earth U.S. is a membership organization consisting of more than 290,000 members and almost 5 million activists nationwide. Plaintiff/Appellant Center for International Environmental Law is a non-profit legal organization with offices in Washington, D.C., and Geneva, Switzerland, with over 50,000 supporters in the United States and worldwide. These three organizations do not have stock, nor do they have parent companies, subsidiaries, or affiliates that have issued shares to the public.

Respectfully submitted this 26th day of September 2022,

/s/ *William J. Snape, III*
William J. Snape, III

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

1. <u>Parties and Amici</u>: The Plaintiffs/Appellants in this case are the Center for Biological Diversity, Friends of the Earth, and the Center for International Environmental Law. The Defendant/Appellee is the U.S. International Development Finance Corporation.  Accountability Counsel will file a motion to be an Amicus.

2. <u>Rulings Under Review</u>: The rulings under review in this case are the District Court for the District of Columbia decision in *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, No. 21-cv-1491, 2022 WL 424966 (D.D.C. Feb. 11, 2022), and the Development Finance Corporation's Final Rule exempting itself from Sunshine Act compliance, 85 Fed. Reg. 20,423 (April 13, 2020); *see* 5 U.S.C. § 552b(a)(1) (Sunshine Act definition of "agency").

3. <u>Related Cases</u>: Plaintiffs/Appellants are unaware of any related cases in this Court or any other court.

Respectfully submitted this 26th day of September 2022,

<u>/s/ *William J. Snape, III*</u>
William J. Snape, III

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ...................................... i

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES ................... ii

TABLE OF CONTENTS ................................................................................... iii

TABLE OF AUTHORITIES .............................................................................. v

GLOSSARY OF ABBREVIATIONS .................................................................. vi

INTRODUCTION ............................................................................................. 1

STATEMENT OF JURISDICTION .................................................................. 1

STATEMENT OF ISSUES ................................................................................ 2

PERTINENT STATUTES AND REGULATIONS .............................................. 2

STATEMENT OF THE CASE ........................................................................... 2

SUMMARY OF ARGUMENT .......................................................................... 9

ARGUMENT .................................................................................................. 11

    I.    The Development Finance Corporation is an agency subject
        to the Sunshine Act ................................................................. 11

        A.    The Development Finance Corporation is subject to
            the Sunshine Act under a plain-language reading of
            its enabling statute, the BUILD Act .......................................... 12

        B.    Other federal agencies with similarly situated boards
            comply with the Sunshine Act. ................................................. 20

        C.    The D.C. Circuit's holding in *Symons* is readily
            distinguishable from this case. ................................................. 22

D.    The Agency's reliance on the Millennium
       Challenge Corporation Legal Memo is inapposite
       and distinguishable..................................................................24

II.    Appellants' requested relief is reasonable and appropriate. ...............27

CONCLUSION.................................................................................................31

CERTIFICATION OF COMPLIANCE ..................................................................32

CERTIFICATE OF SERVICE .............................................................................33

# TABLE OF AUTHORITIES

## Cases

*Allegheny Def. Proj. v. Fed. Energy Reg. Comm'n*,
  964 F.3d 1 (D.C. Cir. 2020) ...................................................26

*Allina Health Servs. v. Sibelius*,
  746 F.3d 1102 (D.C. Cir. 2014) .............................................27

*Braniff Airways v. Civ. Aeronautics Bd.*,
  379 F.2d 453 (D.C. Cir. 1967) ...............................................29

*Chamber of Com. v. U.S. Dep't of Lab.*,
  174 F.3d 206 (D.C. Cir. 1999) ...............................................28

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ...............................................................26

*Common Cause v. Nuclear Reg. Comm'n*,
  674 F.2d 921 (D.C. Cir. 1982) .................................................5

*Encino Motorcars, LLC v. Navarro*,
  138 S. Ct. 1134 (2018) ..................................................... 17, 18

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) .............................................28

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency*,
  489 F.3d 1250 (D.C. Cir. 2007) .............................................27

*Nat. Res. Def. Council v. Wheeler*,
  955 F.3d 68 (D.C. Cir 2020) ..................................................29

*Nat'l Parks Conservation Ass'n v. Semonite*,
  916 F.3d 1075 (D.C. Cir. 2019) .............................................26

*PDK Lab'ys Inc. v. DEA*,
  362 F.3d 786 (D.C. Cir. 2004) ...............................................29

v

*Sugar Cane Growers Coop. of Fla. v. Veneman*,
   289 F.3d 89 (D.C. Cir. 2002) ...................................................................27

*\*Symons v. Chrysler Corp. Loan Guarantee Bd.*,
   670 F.2d 238 (D.C. Cir. 1981) ............................... 8, 9, 10, 18, 22, 23, 24

*U.S. Steel Corp. v. U.S. Env't Prot. Agency*,
   595 F.2d 207 (5th Cir. 1979) ...................................................................29

*U.S. Telecom Ass'n v. FCC*,
   400 F.3d 29 (D.C. Cir. 2005) ...................................................................29

*Util. Solid Waste Activities Grp. v. U.S. Env't Prot. Agency*,
   236 F.3d 749 (D.C. Cir. 2001) .................................................................28

## Statutes

5 U.S.C. § 552b ......................................................................................1, 10

5 U.S.C. § 552b(a)(1) ................................................................ 6, 10, 12, 14

5 U.S.C. § 552b(b) .......................................................................................18

5 U.S.C. § 552b(b)–(c) ..................................................................................5

5 U.S.C. § 552b(b)–(f) .................................................................................15

5 U.S.C. § 552b(c)(1)–(10) ..........................................................................15

5 U.S.C. § 552b(e)(1) ....................................................................................6

5 U.S.C. § 552b(f) ..........................................................................................6

5 U.S.C. § 552b(g) .................................................................................. 27, 28

5 U.S.C. § 552b(h) .......................................................................................27

5 U.S.C. § 552b(h)(1) ...................................................................................17

5 U.S.C. § 552b(k) ........................................................................................28

5 U.S.C. § 552b(m) ................................................................28

5 U.S.C. § 553 .......................................................................28

5 U.S.C. § 553(b) ..................................................................10

5 U.S.C. § 702 .......................................................................27

5 U.S.C. § 706 .........................................................................1

12 U.S.C. § 635 .....................................................................20

12 U.S.C. § 635a(b)–(c) ........................................................20

12 U.S.C. § 635a(b)–(c)(1) ....................................................20

12 U.S.C. § 635a(c)(1) ...........................................................20

12 U.S.C. § 635a(c)(6)(B)(i) ..................................................20

15 U.S.C. § 1862 (expired 1983) ..................................... 22, 23

22 U.S.C. § 9613(d)(1) .................................................. 5, 14, 23

22 U.S.C. § 2191a(c) (repealed) .............................................18

22 U.S.C. § 6203(b) ...............................................................19

22 U.S.C. § 6205(b)(1) ...........................................................19

22 U.S.C. § 7703 ....................................................................25

22 U.S.C. § 7703(c)(3) ...........................................................26

22 U.S.C. § 9612 ................................................................3, 25

22 U.S.C. § 9612(a)–(b) ..........................................................4

22 U.S.C. § 9612(b) ...............................................................16

22 U.S.C. § 9613 ....................................................................25

22 U.S.C. § 9613(b)(1) ............................................................................5

22 U.S.C. § 9613(b)(1)(C) ................................................................ 3, 16, 18

22 U.S.C. § 9613(b)(2)(A) ..................................................................5, 23

22 U.S.C. § 9613(b)(2)(A)(i) ............................................................ 14, 15

22 U.S.C. § 9613(b)(2)(A)(ii) .................................................................13

22 U.S.C. § 9613(b)(2)(A)(ii)–(iii) ........................................................12

22 U.S.C. § 9613(b)(2)(A)(iii) ...............................................................15

22 U.S.C. § 9613(b)(2)(B) ......................................................................13

22 U.S.C. § 9613(c) ......................................................................... 17, 18

22 U.S.C. § 9654 ...............................................................................3, 18

28 U.S.C. § 1291 ......................................................................................1

42 U.S.C. § 8103(a) ................................................................................22

42 U.S.C. § 8103(c) ................................................................................22

42 U.S.C. § 8103(i) .................................................................................22

**Legislation**

Better Utilization of Investments Leading to Development ("BUILD") Act,
   Pub. L. No. 115-254, 132 Stat. 3186 (2018) (codified as amended at
   22 U.S.C. §§ 9601–9689) .....................................................................2

Further Consolidated Appropriations Act of 2020,
   Pub. L. No. 116-94, 133 Stat. 2534 (2019)..........................................21

National Defense Authority Act for Fiscal Year 2017,
   Pub. L. No. 114-328, § 1288, 130 Stat. 2000, 2548 (2016) ..................19

**Legislative History**

5 U.S.C. § 552b note ................................................................17

H.R. Rep. No. 94-880 (1976),
    *as reprinted in* 1976 U.S.C.C.A.N. 2183...........................15

S. Rep. No. 94-354 (1976),
    *as reprinted in* 1976 U.S.C.C.A.N. 2183.........................5, 15

**Regulations**

12 C.F.R. §§ 407.1–407.7 ...........................................................21

24 C.F.R § 4100.2 .......................................................................22

**Federal Register Notices**

85 Fed. Reg. 20,423 (Apr. 13, 2020) ................................ 6, 25, 26

Notice of Open Meeting,
    87 Fed. Reg. 51,414 (Aug. 22, 2022) ...................................21

Sunshine Act Meeting for U.S. Agency for Global Media,
    84 Fed. Reg. 7016 (Mar. 1, 2019).........................................19

Sunshine Act Meeting Notice,
    85 Fed. Reg. 12,777 (Mar. 4, 2020)........................................6

Sunshine Act: Overseas Private Investment Corporation Annual
    Public Hearing, 83 Fed. Reg. 2823 (Jan. 19, 2018).........3, 16

**Rules**

Circuit Rule 12(b)(6)....................................................................1

Circuit Rule 28 .............................................................................2

Fed. R. Civ. P. 12(b)(6)..............................................................................7

**Other Authorities**

37 Op. O.L.C. (May 3, 2013).....................................................................25

Development Finance Corporation, Overview, https://www.dfc.gov/
    who-we-are/overview (last visited Sept. 14, 2022) ................................4

Rebecca M. Dresner, *BUILDing a Better Future in International
    Development: Why the DFC Should Be Considered an Agency
    to Comply with Development Finance Standards and Maintain
    Influence Abroad*, 70 Am. U. L. Rev. 2,043 (2021) ............................18

*Authorities upon which Plaintiffs/Appellants chiefly rely are marked with
asterisks.

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| APA | Administrative Procedure Act |
| BUILD Act | Better Utilization of Investments Leading to Development Act |
| CEO | Chief Executive Officer |
| JA | Joint Appendix |

## INTRODUCTION

This case seeks to compel the U.S. International Development Finance Corporation ("Development Finance Corporation") to comply with the open government requirements of the Sunshine Act, 5 U.S.C. § 552b. The Development Finance Corporation has ignored its congressionally mandated duties to comply with the open government and transparency provisions of the Sunshine Act. In doing so, the Development Finance Corporation has prevented Plaintiffs/Appellants and the public from accessing important agency information and attending decision-making meetings on this agency's essential functions.

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1291 as an appeal of a final order of the District Court for the District of Columbia. The District Court had subject matter jurisdiction over the claims set forth in Plaintiffs' Complaint pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, and the Sunshine Act, 5 U.S.C. § 552b. The District Court found the Plaintiffs demonstrated Article III standing. Order at 10–13 (JA___). The D.C. District Court granted Defendant's motion to dismiss under Rule 12(b)(6). Order at 16–17 (JA___). Plaintiffs timely appealed the District Court's decision on April 6, 2022.

## STATEMENT OF ISSUES

Whether Defendant/Appellee Development Finance Corporation violated the Sunshine Act and Administrative Procedure Act by exempting itself from the Sunshine Act's requirements when (1) the Sunshine Act defines a covered agency as one "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate;" and (2) the Development Finance Corporation is headed by a nine-member board of directors, a majority of whom were appointed to their positions by the President with the advice and consent of the Senate.

## PERTINENT STATUTES AND REGULATIONS

Pursuant to Circuit Rule 28, pertinent statutes, regulations, and Federal Register notices are set forth in an addendum to this brief.

## STATEMENT OF THE CASE

All three organizations challenging the Development Finance Corporation's abdication of its Sunshine Act requirements rely upon the open government and information requirements mandated by Congress to carry out their missions. In 2018, Congress passed the Better Utilization of Investments Leading to Development ("BUILD") Act, Pub. L. No. 115-254, 132 Stat. 3186 (2018) (codified as amended at 22 U.S.C. §§ 9601–9689), which dissolved the Overseas

2

Private Investment Corporation and established a new agency, the Development Finance Corporation, in its stead, 22 U.S.C. § 9612.

For many years, the Overseas Private Investment Corporation complied with the open government provisions of the Sunshine Act. *See, e.g.*, Sunshine Act: Overseas Private Investment Corporation Annual Public Hearing, 83 Fed. Reg. 2823 (Jan. 19, 2018). Such openness was essential to the public's ability to learn about and have input into the Overseas Private Investment Corporation's decisions. *See e.g.*, Uhlemann Decl. ¶¶ 4, 7–8 (JA___), DeAngelis Decl. ¶ 5 (JA___), Norlen Decl. ¶ 5 (JA___), and Garcia Zendejas Decl. ¶¶ 5–16 (JA___).

The BUILD Act explicitly commands the Development Finance Corporation and its board of directors to "develop, in consultation with stakeholders, other interested parties, and the appropriate congressional committees, a publicly available policy with respect to consultations, hearings, and other forms of engagement *in order to provide for meaningful public participation in the Board's activities*." 22 U.S.C. § 9613(b)(1)(C) (emphasis added).[1] The BUILD Act also provides that it "shall be a wholly owned Government corporation" established in the executive branch for the purpose of "mobiliz[ing] and facilitat[ing] the

---

[1] In addition, the agency "shall maintain a user-friendly, publicly available, machine readable database with detailed project-level information, as appropriate and to the extent practicable, including a description of the support provided by the [agency]," "the information included in the report to Congress," "and project level performance metrics." 22 U.S.C. § 9654.

participation of private sector capital and skills in the economic development of less developed countries . . . and countries in transition from nonmarket to market economies, in order to complement the development assistance objectives, and advance the foreign policy interests, of the United States." 22 U.S.C. § 9612(a)–(b). This mandate is of significant public interest, especially when it implicates environmental and other interests associated with the promotion of economic development throughout the world.

As the new agency states on its own website, the Development Finance Corporation "advances American foreign policy and American commercial competitiveness. The investments [the agency] mobilizes serve as stabilizing forces in developing countries around the world, including some of the world's poorest countries and regions affected by conflict. Investment in these markets also helps American businesses gain footholds in many of the world's fastest growing markets."[2] The agency spends billions of dollars annually supporting "development in emerging markets" by means such as debt financing, equity investments, feasibility studies, investment funds, political risk insurance, and technical assistance.[3]

---

[2] Development Finance Corporation, Overview, https://www.dfc.gov/who-we-are/overview (last visited Sept. 14, 2022); *see* Pls.' Compl. ¶ 15 (JA___).

[3] *Id.*

The Development Finance Corporation carries out its mandate through its statutorily defined Board of Directors: "[a]ll powers of the Corporation shall vest in and be exercised by or under the authority of the Board." 22 U.S.C. § 9613(b)(1). The Board consists of nine members, which includes (1) the Chief Executive Officer ("CEO") of the Development Finance Corporation; (2) four officers from other federal government agencies; and (3) four other individuals appointed to the board by the President, with the advice and consent of the Senate. *Id.* § 9613(b)(2)(A). The CEO of the Development Finance Corporation is appointed via a nomination by the President, with the advice and consent of the Senate. *Id.* § 9613(d)(1).

"Congress enacted the Sunshine Act to open the deliberations of multi-member federal agencies to public view." *Common Cause v. Nuclear Reg. Comm'n*, 674 F.2d 921, 928 (D.C. Cir. 1982). The Sunshine Act is "founded on the proposition that the government should conduct the public's business in public." S. Rep. No. 94-354, at 1 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 2183, 2245. Pursuant to this objective, the Sunshine Act mandates that "every portion of every meeting" of a covered multimember agency must "be open to public observation," with exceptions that largely follow those in the Freedom of Information Act. 5 U.S.C. § 552b(b)–(c).

"Agency" is defined in the Sunshine Act as "any agency . . . headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1). The Sunshine Act requires agencies to announce publicly the time, place, and subject matter of meetings at least a week before the meeting, and to prepare a complete transcript or electronic recording of meetings that are closed for any reason. *Id.* § 552b(e)(1), (f).

In March 2020, the Development Finance Corporation sought to comply with its Sunshine Act obligations. Sunshine Act Meeting Notice, 85 Fed. Reg. 12,777 (Mar. 4, 2020). Addendum at 49.  However, just one month later in April 2020, the Development Finance Corporation exempted itself from complying with the substantive open government requirements of the Sunshine Act, issuing a Final Rule in the Federal Register without public notice or comment. 85 Fed. Reg. 20,423 (Apr. 13, 2020).  Addendum at 51.

On June 2, 2021, Plaintiffs/Appellants filed a Complaint in the D.C. District Court to compel the agency to comply with the Sunshine Act. (JA___). Plaintiffs/Appellants challenged the Development Finance Corporation's Final Rule exempting itself from complying with the open government requirements of the Sunshine Act. Plaintiffs/Appellants also challenged the promulgation of the

Final Rule without satisfying the public notice and comment requirements of the

Administrative Procedure Act ("APA").

Defendant/Appellee moved to dismiss Plaintiffs/Appellants' claims under

Federal Rule of Civil Procedure 12(b)(6)[4] on the grounds that the Development

Finance Corporation does not constitute an "agency" under the Sunshine Act,

arguing it is therefore not subject to the Act's substantive open government

requirements. On February 11, 2022, the D.C. District Court granted the agency's

motion to dismiss without oral argument. Order at 21 (JA___).

The District Court held that the Plaintiff/Appellant organizations had

established informational standing to challenge the agency's Final Rule. Order at

10–13 (JA___). The Court found that the Plaintiff/Appellant organizations suffered

the kind of informational injuries that Congress intended to prevent in enacting the

Sunshine Act. *Id.* at 10–11 (JA___). For example, Doug Norlen, a member and

staff official of Plaintiff/Appellant Friends of the Earth detailed in his declaration

how the Development Finance Corporation's agency action injured his ability to

advocate on a liquefied natural gas development in Mozambique, where his

organization had been involved for years:

> On September 9, 2020, [the agency] had a board meeting that was
> closed to the public and was not noticed in the Federal Register
> because they had since claimed that the Sunshine Act did not apply to

---

[4] As such, there was no administrative record created by the Development Finance
Corporation for the district court proceeding.

> them . . . . At this board meeting, the board voted on the Rovuma [gas] project—a liquefied natural gas development and export project in northern Mozambique. Friends of the Earth has worked closely with [others] on this project since 2015 and a staff member of my program has visited impacted communities, and written comments and reports analyzing the environmental and social impact assessment and other findings. Without this notification and ability to comment, [the agency] approved up to $1.5 billion in political risk insurance for the project despite the increasing violence, negative impacts on local communities, and massive greenhouse gas emissions.

Norlen Decl. ¶ 7 (JA___). *See also* DeAngelis Decl. ¶ 8, (JA___).

Plaintiffs/Appellants also detailed their inability to prepare for Development Finance Corporation meetings, which prevented them from being able to adequately represent their organizational and members' interests. *See, e.g.*, Uhlemann Decl. ¶ 6–12 (JA___); Snape Decl. ¶ 4–8 (JA___); Garcia Zendejas Decl. ¶ 18–21, (JA___). Thus, the lower court found Plaintiffs/Appellants' injuries were sufficiently imminent and concrete to establish standing. Order at 13 (JA___).

On the merits, the District Court held that the Development Finance Corporation does not constitute an "agency" subject to the Sunshine Act after finding a majority of the members of the new agency's Board were not specifically appointed to the board by the President and confirmed by the Senate. *Id.* at 18–21 (JA___). The court based its ruling on its reading of a D.C. Circuit holding in a 1981 Sunshine Act case. *Id.* (JA___) (discussing *Symons v. Chrysler Corp. Loan Guarantee Bd.*, 670 F.2d 238 (D.C. Cir. 1981)). In that case, this Court held that the Chrysler Corporation Loan Guarantee Board ("Chrysler Board") was not an

8

agency for purposes of the Sunshine Act because *all* its board members served by virtue of their positions at different agencies, finding these members were not appointed "to such position" on the "collegial body" of the Chrysler Board in "literal terms." *Id*. at 241–42.

Here, four of the Board's nine members are appointed directly to the Board by the President with the advice and consent of the Senate, four serve by virtue of other appointments, with the final and ninth member, namely the Development Finance Corporation CEO, nominated and confirmed to the "exact same agency" for which Board membership is an inseparable component of the job description. *See* Order at 18–19 (JA___) (quoting Pls.' Opp'n Br. at 27, 28 (JA___)). In a "final thought," the District Court below noted this Court may find the statutory composition and majority of the Development Finance Corporation's board is distinguishably different from that in *Symons*:

> [T]oday's Circuit might find it appropriate to reexamine [its previous] analysis in light of the difference between the [Development Finance Corporation] CEO's board status and that of the ex officio directors in *Symons*. While those differences have not carried the day in this Court, the Circuit may see more leeway to revisit the application of its precedent in the first instance.

Order at 21 (JA___).

## SUMMARY OF ARGUMENT

Defendant/Appellee the Development Finance Corporation's closed-door decision to exempt itself from the open government requirements of the Sunshine

Act, 5 U.S.C. § 552b, is unlawful, as is its issuance of a binding and final action without any public notice or comment under the APA, 5 U.S.C. § 553(b). The agency's basis for its self-declared exemption is that the Sunshine Act allows the agency to exclude its own CEO—who is simultaneously nominated by the President and confirmed by the Senate to serve as both CEO and Board member— when determining the majority board composition.

The central dispute in this litigation is thus over the interpretation of the Sunshine Act's definition of agency: "any agency . . . headed by a collegial body composed of two or more individual members, *a majority of whom are appointed to such position by the President with the advice and consent of the Senate* . . . ." *Id.* § 552b(a)(1) (emphasis added). A plain-language reading of the BUILD Act and its legislative history, as well as the legislative intent of the Sunshine Act, support Plaintiffs/Appellants' reading. Further, the marked differences between the Development Finance Corporation CEO's board status and that of the board members at issue in *Symons* render this case distinguishable from this Court's holding there. *See* Order at 21 (JA___) (noting "today's Circuit might find it appropriate to reexamine [its *Symons*] analysis in light of" these differences). With its unique composition, the Development Finance Corporation Board should be subject to the Sunshine Act, and *Symons* does not dictate a contrary result.

10

The Development Finance Corporation is currently continuing to hold Board meetings closed to the public, making important and costly decisions without, *inter alia*, the Sunshine Act's requirements for public notice, transparency, and record-keeping, further and continually injuring Plaintiffs/Appellants, as alleged in their declarations to the District Court. *See, e.g.*, Snape Decl. ¶ 7 (JA___). Plaintiffs/Appellants' injuries are redressable only by an order from this Court requiring the agency to comply with the Sunshine Act.

## ARGUMENT

### I.      The Development Finance Corporation is an agency subject to the Sunshine Act.

A plain reading of the Development Finance Corporation's enabling statute, the BUILD Act, demonstrates that the agency is subject to the open government requirements of the Sunshine Act. Only through a convoluted statutory reading is the agency able to reinterpret the BUILD Act in such a way that its CEO—who is clearly nominated by the President and confirmed by the Senate to serve as both the agency CEO and an agency board member—is not considered so appointed when calculating the majority board composition. The agency's strained and illogical reading of the statute is unlawful.

As discussed below, a plain reading of the BUILD Act and other comparable statutes, as well as an evaluation of legislative history and past practice of similarly situated agencies, all demonstrate that Congress expected the Development

Finance Corporation to comply with the Sunshine Act. Crucially, the Court's holding in *Symons*, and the Development Finance Corporation's inapposite reliance on the non-binding Millennium Legal Memo, are readily distinguishable from this case and need not constrain this Court in any manner.

A.    **The Development Finance Corporation is subject to the Sunshine Act under a plain-language reading of its enabling statute, the BUILD Act.**

Whether an "agency" is subject to the Sunshine Act turns on the question of its leadership composition—namely, whether "a majority of [its members] are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1). The composition of the Development Finance Corporation board is the crux of this litigation. A plain-language reading of the BUILD Act's statutory provisions governing board composition demonstrates the Development Finance Corporation is subject to the Sunshine Act's open government provisions.

The BUILD Act specifically names four board members who are "appointed by the President, by and with the advice and consent of the Senate," and enumerates a list of four other Cabinet secretary or agency-designee members who serve by virtue of their positions at other agencies. 22 U.S.C. § 9613(b)(2)(A)(ii)–(iii); *see* 5 U.S.C. § 552b(a)(1) (defining an "agency" as one headed by a "collegial body" made of a majority of members the President appoints "with the advice and

consent of Congress").[5] Here, the Parties agree that (1) "the four board members appointed directly to the Board are 'appointed to such position' and count for Sunshine Act purposes," and (2) "the four officials from other agencies serve by virtue of their separate appointments" to other agencies "and therefore do not count for Sunshine Act purposes." Order at 18 (JA___).

The ninth and dispositive member of the Development Finance Corporation Board is the agency's CEO. 22 U.S.C. § 9613(b)(2)(A)(i). This is where the Parties' disagreement lies—whether or not the agency's own CEO is "appointed to [the agency's board] by the President with the advice and consent of the Senate"— as this question decides if the majority are so appointed or instead serve on the basis of another appointment to another agency. 5 U.S.C. § 552b(a)(1); *see* Order at 18 (JA___) (This is "[t]he only dispute.").

The BUILD Act states that "[t]here shall be in the Corporation a Chief Executive Officer, who *shall be appointed by the President, by and with the advice and consent of the Senate . . . .*" 22 U.S.C. § 9613(d)(1) (emphasis added). The statute further provides that one of the principal duties of the CEO is to serve on the agency's Board, which directs all of its activities. *Id*. § 9613(b)(2)(A)(i).

_____

[5] The four other board members are the Secretary of State, Secretary of Treasury, Secretary of Commerce, and Administrator for the U.S. Agency for International Development. 22 U.S.C. § 9613(b)(2)(A)(ii), (b)(2)(B). All four individuals come from other agencies, not the Development Finance Corporation. *Id.* § 9613(b)(2)(B).

Consequently, when a CEO is appointed and confirmed to this agency position, the appointment and confirmation *necessarily* applies to the agency Board position as well.

In short, the Presidential appointment and Senate confirmation for the agency's CEO also occur for Board membership, with both roles being filled simultaneously and automatically the moment Senate confirmation occurs. The same person holds both roles by law. Accordingly, the final tie-breaking board member is appointed and confirmed to "such position," 5 U.S.C. § 552b(a)(1), part and parcel of being appointed and confirmed as CEO of the same agency, 22 U.S.C. § 9613(b)(2)(A)(i) (CEO is automatic board member); *id.* § 9613(d)(1) (President appoints CEO with Congress's consent). Nothing in the legislative language or history suggests Congress intended to end Sunshine Act compliance when it transferred functions to a new agency.

Similarly, no statutory language or legislative history suggests Congress envisioned any relevant legal distinction, let alone one of dispositive impact under the Sunshine Act, between appointment and confirmation of the Development Finance Corporation's CEO and the CEO's simultaneous legislatively mandated service on the Development Finance Corporation Board. The plain language and statutory structure of the BUILD Act support a reading of the CEO as being in a fundamentally different position from Development Finance Corporation Board

14

members who serve by virtue of service in other agencies, because the Development Finance Corporation's CEO's appointment and confirmation is simultaneous with, and both legally and factually inseparable from, service on the Development Finance Corporation Board.[6]

In enacting the Sunshine Act, Congress codified the idea that "[g]overnment is and should be the servant of the people, and it should be fully accountable to them for the actions which it supposedly takes on their behalf." H.R. Rep. No. 94-880, pt. I at 2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 2183, 2184; *and see* S. Rep. No. 94-354, at 1 ("[T]he government should conduct the public's business in public."). To this end, the Sunshine Act grants public access to information regarding the federal government's decision-making processes by imposing a suite of open government requirements, including public notice of meetings, public attendance at meetings, public minutes and transcripts of meetings, and public notice of any closed meetings. 5 U.S.C. § 552b(b)–(f).[7]

---

[6] In specifying the makeup of the Development Finance Corporation's Board in the BUILD Act, Congress placed the CEO in a separate category from the four board members who serve solely by virtue of their positions with *other* government agencies. 22 U.S.C. § 9613(b)(2)(A)(i), (iii).

[7] The Sunshine Act also possesses many fact-specific exceptions for the agency to withhold certain categories of information disclosure at Board meetings, making the DFC's attempt at a blanket agency-wide exemption even more spurious. 5 U.S.C. § 552b(c)(1)–(10) (such information exceptions include those pertaining to national defense, internal personnel rules, matters exempted by statute, trade

It is undisputed that the Development Finance Corporation's predecessor, the Overseas Private Investment Corporation, complied with the Sunshine Act. *See, e.g.*, 83 Fed. Reg. at 2823 (public notice of open meeting under the Sunshine Act). Addendum at 48. Congress did *not* say it was curtailing any public access that previously existed under the Sunshine Act when replacing the Overseas Private Investment Corporation with the new Development Finance Corporation in the BUILD Act.

With the creation of the Development Finance Corporation, Congress expressly sought to modify the existing development finance functions of the United States to "mobilize and facilitate the participation of private sector capital and skills in the economic development of less developed countries . . . to complement the development assistance objectives, and advance the foreign policy interests, of the United States." 22 U.S.C. § 9612(b). The BUILD Act also demands various forms of engagement from the Development Finance Corporation "to provide for meaningful public participation in the Board's activities." 22 U.S.C. § 9613(b)(1)(C). Nothing in the language of the BUILD Act or its legislative history indicate Congress meant to alter or supplant prior agency transparency requirements under the Sunshine Act.

---

secrets, personal commercial or financial data, privileged or confidential matters, protection of privacy, law enforcement records, and others).

This conclusion comports with the public access mandate that is central to both the BUILD Act and Sunshine Act. The Sunshine Act enacts Congress's overriding intent to establish a "policy of the United States that the public is entitled to the fullest practicable information regarding the decision making processes of the Federal Government." 5 U.S.C. § 552b note (Declaration of Policy and Statement of Purpose). The burden is on the defendant agency to sustain its action contrary to these laws and policies. *See* 5 U.S.C. § 552b(h)(1) (granting judicial authority to enforce the Sunshine Act's requirements for government openness and transparency to the public).

The Sunshine Act's policy of open meetings and transparency should apply wherever it aligns with Congress's language in establishing an agency. This is the case here, especially since Congress never indicated a desire to foreclose public scrutiny of or public access to decision-making processes that had thus far been subject to the Sunshine Act's requirements. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1143 (2018) (explaining that "silence in the legislative history, 'no matter how "clanging," cannot defeat the better reading of the text and statutory context.") (citations omitted).[8]

---

[8] The BUILD Act requires that the "Board shall hold at least 2 public hearings each year in order to afford an opportunity for any person to present views with respect" to certain aspects of the agency's work. 22 U.S.C. § 9613(c). That limited public participation obligation, which is quite similar to one imposed on its predecessor agency, the Overseas Private Investment Corporation (*see* 22 U.S.C. § 2191a(c)

17

Thus, this Court is tasked with determining the "best reading" of existing statutory provisions based on the spirit and goals of the Sunshine Act and BUILD Act. *Encino*, 138 S. Ct. at 1143; *and see Symons*, 670 F.2d at 248 (Wald, J., dissenting) (reviewing and discussing weight of legislative history). Here, Congress called for transparency and agency accountability, never indicating a desire to change the Development Finance Corporation's compliance with the Sunshine Act from that of its predecessor.[9] Both the BUILD Act and Sunshine Act have common goals of transparency and accountability, in the spirit of promoting public participation in board meetings and decision-making processes where the public has a vested interest. *See* 22 U.S.C. §§ 9613(b)(1)(C), 9613(c), 9654; 5 U.S.C. § 552b(b). In light of the similar transparency and open government purposes of the Acts, the best reading is that Congress intended the Development Finance Corporation to comply with the Sunshine Act.

---

(repealed)), is no substitute for the broad and comprehensive open government requirements of the Sunshine Act. In other words, the provision merely provides a floor for minimum number of meetings per year, not how the meetings will be conducted.

[9] *See* Rebecca M. Dresner, *BUILDing a Better Future in International Development: Why the DFC Should Be Considered an Agency to Comply with Development Finance Standards and Maintain Influence Abroad*, 70 Am. U. L. Rev. 2,043, 2,062–67 (2021) (JA___) (discussing how Congressional silence has been interpreted when disagreements over the meaning of "agency" have arisen, and arguing, *inter alia,* the Development Finance Corporation is an "agency" under the Sunshine Act in light of transparency mandates in the BUILD Act).

18

Agencies have complied with the Sunshine Act in comparable situations involving a transfer of agency functions when Congress similarly gave no indication it intended to truncate former public access. For example, in 2016, Congress restructured the Broadcasting Board of Governors, transferring its board to an advisory role, consolidating power in its CEO, and renaming the agency as the U.S. Agency for Global Media. *See* National Defense Authority Act for Fiscal Year 2017, Pub. L. No. 114-328, § 1288, 130 Stat. 2000, 2548 (2016); *see also* 22 U.S.C. §§ 6203(b), 6205(b)(1) (discussing the roles of the U.S. Agency for Global Media's board and CEO). As with the Development Finance Corporation, Congress did not manifest any intent that the agency restructuring should be accompanied by a diminution of public access; consequently, the new agency continued to comply with Sunshine Act requirements. *See, e.g.*, Sunshine Act Meeting for U.S. Agency for Global Media, 84 Fed. Reg. 7016 (Mar. 1, 2019) (JA___). In the same way, because the Sunshine Act applied to the Overseas Private Investment Corporation and Congress expressed no intent to significantly curtail longstanding public access to the successor agency's meetings or decisions, open government requirements also apply to the new Development Finance Corporation.

**B.      Other federal agencies with similarly situated boards comply with the Sunshine Act.**

Significantly*,* other federal agencies with board compositions similar to that prescribed for the Development Finance Corporation currently comply with the Sunshine Act. As discussed below, those agencies' boards are also comprised in part of members who hold their board positions both by (1) Presidential appointment and Senate confirmation and (2) virtue of their positions with other, outside agencies.

A compelling example is the U.S. Export-Import Bank. First, the Development Finance Corporation's mission is very similar to that of the Export-Import Bank. *See* 12 U.S.C. § 635 (outlining the Bank's powers and functions). Second, the Bank's board also operates with a hybrid membership of individuals who are appointed and those who serve due to their positions in other agencies. *Id*. § 635a(b)–(c). The Bank's President and Vice President are appointed by the President upon Senate confirmation, and they also serve on the Export-Import Bank's board as a part of their appointed positions. *Id*. § 635a(b)–(c)(1). The Bank's other three regular board members are also appointed by the President with consent of the Senate. *Id.* § 635a(c)(1). However, when faced with an insufficient number of members to make a quorum, the U.S. Trade Representative, Secretary of the Treasury, and Secretary of Commerce serve on the Bank's board by virtue of their positions in those other agencies. *Id*. § 635a(c)(6)(B)(i).

20

Currently, the Secretary of Commerce and the U.S. Trade Representative both serve on the Export-Import Bank's board, positioning the Bank's President and CEO as the tie-breaking board member under the Sunshine Act's definition of "agency"—as is the situation in the instant case. Nevertheless, the Bank complies with Sunshine Act obligations. *See generally* 12 C.F.R. §§ 407.1–407.7 (Export-Import Bank's Sunshine Act regulations).

Looking again to the purpose and intent of the Sunshine Act, both the Export-Import Bank and Development Finance Corporation control significant public resources and maintain the power to irrevocably commit them, and the public is entitled to the complete information about its investments through the statutory open government requirements of the Sunshine Act. The Export-Import Bank was reauthorized by Congress in 2019. Further Consolidated Appropriations Act of 2020, Pub. L. No. 116-94, §§ 402–409, 133 Stat. 2534, 3021–26 (2019). Just as with the BUILD Act, Congress was silent on continued Sunshine Act compliance yet, unlike here, the Export-Import Bank has continued to lawfully comply with the Sunshine Act. *See, e.g.*, Notice of Open Meeting, 87 Fed. Reg. 51,414 (Aug. 22, 2022) (announcing a regular board meeting that was "open to public observation.").

Similarly, the board of the Neighborhood Reinvestment Corporation (known as "NeighborWorks") is made up exclusively of members who hold their board

positions by virtue of their appointment to other positions within that entity. *See* 42 U.S.C. § 8103(a), (c). Meetings of the NeighborWorks board thus comply with the provisions of the Sunshine Act. 42 U.S.C. § 8103(i); *see generally* 24 C.F.R § 4100.2 (NeighborWorks Sunshine Act regulations). In the same way as these similarly situated federal agencies, the Development Finance Corporation must comply with the Sunshine Act.

**C.**    **The D.C. Circuit's holding in *Symons* is readily distinguishable from this case.**

In the proceedings below, the District Court believed it was bound by this Court's 1981 decision in *Symons* when evaluating whether the Development Finance Corporation's board composition renders it an "agency" under the Sunshine Act. Order at 18–19, 21 (JA___). However, this Court need not "revisit the application of its precedent" as the District Court suggested, because the facts and holding in *Symons* are readily distinguishable from this case.

The biggest distinction from the instant case is that *Symons* involved a statutory scheme where *all* the agency board members participated on the board by virtue of their appointments to various other positions in different agencies. 670 F.2d at 240. The enabling statute at issue in *Symons* specified that *all* of the Chrysler board was to be composed of persons holding statutorily specified government posts in other agencies. 15 U.S.C. § 1862 (expired 1983). Under the Chrysler board composition, the Secretary of the Treasury chaired the Board; the

Chairman of the Board of Governors of the Federal Reserve System and the Comptroller General of the United States were the other voting members; and the Secretaries of Labor and Transportation served as nonvoting members. *Id.*; *Symons*, 670 F.2d at 240. Thus, the D.C. Circuit found that while all Chrysler board members were appointed to their other positions by the President with the advice and consent of the Senate, they were not so appointed or confirmed to their positions on the Chrysler board. *Symons*, 670 F.2d at 240. Therefore, the *Symons* court held that the Chrysler board composition rendered it a non-agency for purposes of Sunshine Act compliance. 670 F.2d at 245.

Here, by contrast, there is no question—and the Development Finance Corporation does not dispute—that four of the nine board members are nominated and confirmed solely to be on the Development Finance Corporation Board. These four members are not appointed officials of other federal agencies as in *Symons*. The decisive member—the Development Finance Corporation CEO's Board position—is simultaneously nominated by the President and confirmed by the Senate for *both* the chief executive position and the board position for the same agency. 22 U.S.C. § 9613(b)(2)(A), (d)(1).

As the *Symons* court explained, Congress rejected "the idea of listing covered agencies in the [Sunshine] Act" but only "out of fear that an agency might inadvertently be omitted when the list was compiled, and to avoid the need for

23

amending the statute each time a new agency was created." *Symons*, 670 F.2d at 244 (citing legislative history). However, "both the Senate Report and the House Judiciary Report set forth what Congress believed was a complete list of entities that would be covered by the Sunshine Act's definition of 'agency.' It should be noted that not one of the forty-seven agencies listed had a majority of so-called ex officio members. Each one had a majority of persons who were appointed by the President *to the agency itself*." *Symons*, 670 F.2d at 244 (emphasis added).

In sum, the holding and rationale of *Symons* do not extend to this situation where the tie-breaking board member in question is both the CEO and board member of the *same agency*—and could not be one without being the other. As such, the legal issue presented in this case is one of first impression for this Court. Here, the Development Finance Corporation CEO is nominated by the President and confirmed by the Senate to his CEO and Board positions simultaneously, meaning that a majority of Board Development Finance Corporation members— five of nine—are so nominated and confirmed, rendering the Development Finance Corporation an "agency" that must comply with the Sunshine Act.

### D. The Agency's reliance on the Millennium Challenge Corporation Legal Memo is inapposite and distinguishable.

In its Final Rule exempting itself from the Sunshine Act, the Development Finance Corporation attempts to justify its interpretation of the BUILD Act—that is, claiming the Development Finance Corporation CEO is *not* nominated by the

President and confirmed by the Senate to the agency's Board—by citing to a non-binding Department of Justice legal opinion justifying such an exemption for a *different* agency with *different* enabling legislation, the Millennium Challenge Corporation. 85 Fed. Reg. at 20,423 (citing 37 Op. O.L.C. (May 3, 2013) ("Millennium Memo")). However, this justification unravels upon comparing the plain language of the enabling legislation for Millennium, 22 U.S.C. § 7703, and that of the Development Finance Corporation, *id*. §§ 9612–9613. Aside from its irrelevance to this case, the Millennium Memo is also not binding on the Development Finance Corporation and should receive no deference.

In the enabling legislation for Millennium, the CEO is listed in the same grouping as four officers who participate in board activities *solely* by virtue of their other official positions:

(3)    Membership

The Board shall consist of—

(A)    the Secretary of State, the Secretary of the Treasury, the Administrator of the United States Agency for International Development, the Chief Executive Officer of the Corporation, and the United States Trade Representative; and

(B)    four other individuals with relevant international experience who shall be appointed by the President, by and with the advice and consent of the Senate.

25

22 U.S.C. § 7703(c)(3). The Millennium board composition is similar to that of the Chrysler board at issue in *Symons*—where members who serve on the board by virtue of their appointment to positions at other agencies are not counted as appointed by the President and confirmed by the Senate "to such position" for Sunshine Act purposes.

Here, however, nothing in the plain language of the BUILD Act indicates that Congress intended the Development Finance Corporation CEO be treated as outside of his own agency, or that Congress intended the agency to be exempt from the Sunshine Act. Thus, the Development Finance Corporation's reliance on the Millennium Memo in its Final Rule is inappropriate and misplaced, as the exemption for Millennium is based on an entirely different structure and underlying legislative intent. 85 Fed. Reg. at 20,423.[10] Millennium's Sunshine Act exemption was not challenged in court.

---

[10] Further, the Development Finance Corporation's decision to exempt itself from the Sunshine Act cannot receive deference from this Court because the Development Finance Corporation is not the expert agency tasked with administering the Sunshine Act. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984) (recognizing that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"); *see also Allegheny Def. Proj. v. Fed. Energy Reg. Comm'n*, 964 F.3d 1, 11–12 (D.C. Cir. 2020) (finding *Chevron* deference did not apply to the Federal Energy Regulatory Commission's interpretation of a Natural Gas Act provision conferring jurisdiction on federal courts); *Nat'l Parks Conservation Ass'n v. Semonite*, 916 F.3d 1075, 1088 (D.C. Cir. 2019) (giving no deference to the U.S. Army Corps of Engineers' interpretation of the Natural

## II.     Appellants' requested relief is reasonable and appropriate.

Both the Sunshine Act and APA provide for declaratory and injunctive relief

here, as well as vacatur of the unlawful Development Finance Corporation Final

Rule exempting itself from the Sunshine Act. *See* 5 U.S.C. § 552b(g), (h); *id.*

§ 702. Vacatur is the normal or usual remedy where, as here, a federal agency has

acted contrary to law. *Allina Health Servs. v. Sibelius*, 746 F.3d 1102, 1110 (D.C.

Cir. 2014) ("vacatur is the normal remedy"); *Sugar Cane Growers Coop. of Fla. v.*

*Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) (courts "[n]ormally" vacate actions

that are in clear violation of law); *Nat. Res. Def. Council v. U.S. Env't Prot.*

*Agency*, 489 F.3d 1250, 1261–62 (D.C. Cir. 2007) (vacating rule that "conflict[ed]

with the plain meaning" of the Clean Air Act).

Plaintiffs/Appellants request a judicial declaration that the Development

Finance Corporation is violating both the Sunshine Act and the APA.

Plaintiffs/Appellants also ask this Court to order the agency to expeditiously issue

a proposed rule stating an intention to comply with the Sunshine Act and order all

future Development Finance Corporation Board meetings to comply with the

requirements of the Sunshine Act. *See* Compl. ¶¶ 67–71 (JA___); Snape Decl.

¶¶ 4–7 (JA___). This includes releasing all records and documents associated with

---

Historic Preservation Act, which it does not administer, in its evaluation of a
project under the National Environmental Policy Act).

past unlawfully closed Development Finance Corporation meetings. *See* 5 U.S.C. § 552b(k), (m) (requirements for public access to meeting records). This reasonable relief would provide Plaintiffs/Appellants with unlawfully withheld information and prevent future injury from failure to comply with the Sunshine Act's open government requirements.

Plaintiffs/Appellants also request that this Court order the Development Finance Corporation to issue a proposed rule and undertake notice-and-comment rulemaking on its forthcoming Sunshine Act compliance. It is well-established in the D.C. Circuit that "[a]n agency is generally required by the APA to publish notice of proposed rulemaking in the Federal Register and to accept and consider public comments on its proposal." *Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014) (citing 5 U.S.C. § 553); *accord Util. Solid Waste Activities Grp. v. U.S. Env't Prot. Agency*, 236 F.3d 749, 752 (D.C. Cir. 2001); *Chamber of Com. v. U.S. Dep't of Lab.*, 174 F.3d 206, 211 (D.C. Cir. 1999); *see also cf.* 5 U.S.C. § 552b(g) (explaining that before promulgating Sunshine Act implementing regulations, agencies must "publish[] notice in the Federal Register of at least thirty days and [provide] opportunity for written comment by any person").

Below, the District Court found that the Development Finance Corporation's failure to issue a proposed rule and undertake notice-and-comment rulemaking procedures on its Final Rule exempting itself from the Sunshine Act was mere

harmless error because it found the was not an "agency" subject to the Sunshine Act. Order at 14 (JA___). However, the doctrine of harmless error should only be used "when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." *U.S. Steel Corp. v. U.S. Env't Prot. Agency*, 595 F.2d 207, 215 (5th Cir. 1979) (quoting *Braniff Airways v. Civ. Aeronautics Bd.*, 379 F.2d 453, 466 (D.C. Cir. 1967)). Only when an agency "mistake" does not affect the outcome or prejudice an interested party would it be appropriate to remand for agency reconsideration. *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004).

In this case, the Development Finance Corporation's procedural "mistake"— foregoing public notice and comment—clearly affected the outcome of its decision to exempt itself from the Sunshine Act, depriving Plaintiffs/Appellants of their legal rights under the APA and Sunshine Act. Here, there was "an utter failure to comply with notice and comment," which the D.C. Circuit has stated "cannot be considered harmless" if there is any uncertainty as to the effect of the violation. *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 41 (D.C. Cir. 2005) (citation omitted). Only if it was *impossible* for public comment to change the course of agency decision-making could such a failure be considered harmless. *See Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 84–85 (D.C. Cir 2020) (rejecting harmless error argument for failure to provide notice and comment).

29

Had there been a proposed rule on Sunshine Act compliance, the agency and public would have contemplated the Sunshine Act behavior of other federal agencies in a similar position to the Development Finance Corporation, with the opportunity to influence and challenge the substance of the Final Rule. Further, had the Development Finance Corporation issued a proposed rule and held a public comment period, the appropriateness of relying on the Millennium Memo would have been discussed in more detail with the public. Had there been a proposed rule, a richer discussion of the Sunshine Act's goals and purposes would have occurred.

In addition, should this Court find the Development Finance Corporation is an agency that must comply with the Sunshine Act, Plaintiffs/Appellants are substantially injured by the agency's failure to comply with the Sunshine Act open government requirements. For example, the Development Finance Corporation made decisions at its private board meeting on June 9, 2022, that were not even noted in the public notice and agenda of the public Board meeting. Snape Decl. ¶ 4–8 (JA___). Plaintiffs/Appellants were utterly uninformed of these closed-door decisions, which had enormous environmental consequences well beyond the exacting standard for harmless error. *See* Order at 10–13 (JA___) (discussing the extent of the informational injury Plaintiffs/Appellants suffered as a result of the Development Finance Corporation's failure to comply with the Sunshine Act).

30

## CONCLUSION

Given the plain statutory language and purpose of the Sunshine and BUILD

Acts, the Development Finance Corporation is subject to and must comply with the

Sunshine Act. For these and all the reasons stated herein, Plaintiffs/Appellants

respectfully request that this Court vacate the Final Rule and order the

Development Finance Corporation to comply with the Sunshine Act.


Dated: September 26, 2022.                    Respectfully submitted,


                                             /s/ *William J. Snape III*
                                             William J. Snape, III
                                             DC Bar No. 455266
                                             American University Law School
                                             Center for Biological Diversity
                                             4300 Nebraska Avenue, NW
                                             Washington, DC 20016
                                             wsnape@wcl.american.edu
                                             bsnape@biologicaldiversity.org
                                             Tel: (202) 536-9351

                                             Margaret A. Coulter
                                             Center for Biological Diversity
                                             1411 K Street NW, Suite 1300
                                             Washington, DC 20005
                                             mcoulter@biologicaldiversity.org
                                             Tel: (202) 961-4820

                                             *Attorneys for Plaintiffs*

## CERTIFICATION OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 32(e)(2) because this brief contains 7054 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Respectfully submitted this 26th day of September 2022,

/s/ *William J. Snape, III*
William J. Snape, III

## CERTIFICATE OF SERVICE

The undersigned certifies that the Opening Brief of Plaintiffs/Appellants the Center for Biological Diversity, Friends of the Earth, and Center for International Environmental Law was electronically filed with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit on September 26, 2022, by utilizing the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted this 26th day of September 2022,

*/s/ William J. Snape, III*
William J. Snape, III

33