APPEAL,CLOSED,TYPE−C

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:21−cv−01491−CRC</u>
### *Internal Use Only*

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY et al | Date Filed: 06/02/2021 |
| Assigned to: Judge Christopher R. Cooper | Date Terminated: 02/11/2022 |
| Cause: 05:702 Administrative Procedure Act | Jury Demand: None |
| | Nature of Suit: 895 Freedom of Information Act |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**CENTER FOR BIOLOGICAL DIVERSITY**    represented by    **William John Snape , III**
WASHINGTON COLLEGE OF LAW
4300 Nebraska Ave, NW
Washington, DC 20016
(202) 536−9351
Fax: (415) 436−9683
Email: <u>wsnape@wcl.american.edu</u>
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**FRIENDS OF THE EARTH**    represented by    **William John Snape , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW**    represented by    **William John Snape , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. INTERNATIONAL DEVELOPMENT FINANCE CORPORATION**    represented by    **James C. Luh**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 514−4938
Fax: (202) 616−8460
Email: <u>james.luh@usdoj.gov</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/02/2021 | 1 | | COMPLAINT against U.S. INTERNATIONAL DEVELOPMENT FINANCE CORPORATION ( Filing fee $ 402 receipt number ADCDC−8495955) filed by CENTER FOR BIOLOGICAL DIVERSITY, CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, FRIENDS OF THE EARTH. (Attachments: # 1 Civil Cover Sheet, # 2 Summons DFC, # 3 Summons AG, # 4 Summons USADC, # 5 Declaration Financial Disclosure CBD, # 6 Declaration Financial Disclosure FoE, # 7 Declaration Financial Disclosure CIEL)(Snape, William) (Entered: 06/02/2021) |
| 06/02/2021 | | | Case Assigned to Judge Christopher R. Cooper. (adh, ) (Entered: 06/02/2021) |
| 06/02/2021 | 2 | | SUMMONS (3) Issued Electronically as to U.S. INTERNATIONAL DEVELOPMENT FINANCE CORPORATION, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(adh, ) (Entered: 06/02/2021) |
| 06/02/2021 | 3 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CENTER FOR BIOLOGICAL DIVERSITY, CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, FRIENDS OF THE EARTH (Attachments: # 1 Financial Disclosure for CIEL, # 2 Financial Disclosure for FoE)(Snape, William) (Entered: 06/02/2021) |
| 06/10/2021 | 4 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/9/2021. Answer due for ALL FEDERAL DEFENDANTS by 8/8/2021. (Snape, William) (Entered: 06/10/2021) |
| 06/10/2021 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 06/09/2021. (Snape, William) (Entered: 06/10/2021) |
| 06/10/2021 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. INTERNATIONAL DEVELOPMENT FINANCE CORPORATION served on 6/10/2021 (Snape, William) (Entered: 06/10/2021) |
| 07/08/2021 | 7 | | DECLARATION *by William Snape and others* by CENTER FOR BIOLOGICAL DIVERSITY, CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, FRIENDS OF THE EARTH. (Attachments: # 1 Declaration Sarah Uhlemann, # 2 Declaration Kate DeAngelis, # 3 Declaration Doug Norlen, # 4 Declaration Carla Zendejas, # 5 Exhibit Attachment A, # 6 Exhibit Attachment B, # 7 Exhibit Attachment C, # 8 Exhibit Attachment D)(Snape, William) (Entered: 07/08/2021) |

| | | | |
|---|---|---|---|
| 07/09/2021 | 8 | | MOTION to Dismiss , MOTION to Dismiss for Lack of Jurisdiction *(Defendant's Motion to Dismiss)* by U.S. INTERNATIONAL DEVELOPMENT FINANCE CORPORATION. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Luh, James) (Entered: 07/09/2021) |
| 07/13/2021 | 9 | | Unopposed MOTION for Extension of Time to *File Opposition to Motion to Dismiss* by CENTER FOR BIOLOGICAL DIVERSITY, CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, FRIENDS OF THE EARTH. (Attachments: # 1 Text of Proposed Order)(Snape, William) Modified event on 7/13/2021 (ztd). (Entered: 07/13/2021) |
| 07/16/2021 | | | MINUTE ORDER granting 9 Motion for Extension of Time: It is hereby ORDERED that plaintiffs' time to respond to defendants' motion to dismiss is extended to August 13, 2021. Signed by Judge Christopher R. Cooper on 7/16/2021. (lccrc1) (Entered: 07/16/2021) |
| 08/13/2021 | 10 | | Memorandum in opposition to re 8 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction *(Defendant's Motion to Dismiss)* filed by CENTER FOR BIOLOGICAL DIVERSITY, CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, FRIENDS OF THE EARTH. (Attachments: # 1 Exhibit Attachment E, # 2 Exhibit Attachment F, # 3 Exhibit Attachment G, # 4 Declaration Re−filing ECF 7, # 5 Declaration Re−filing ECF 7.1, # 6 Declaration Re−filing ECF 7.2, # 7 Declaration Re−filing ECF 7.3, # 8 Declaration Re−filing ECF 7.4, # 9 Exhibit Re−filing Attachment A, ECF 7.5, # 10 Exhibit Re−filing Attachment B, ECF 7.6, # 11 Exhibit Re−filing Attachment C, ECF 7.7, # 12 Exhibit Re−filing Attachment D, ECF 7.8)(Snape, William) (Entered: 08/13/2021) |
| 08/20/2021 | 11 | | REPLY to opposition to motion re 8 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction *(Defendant's Motion to Dismiss) (Defendant's Reply Memorandum in Support of Motion to Dismiss)* filed by U.S. INTERNATIONAL DEVELOPMENT FINANCE CORPORATION. (Luh, James) (Entered: 08/20/2021) |
| 12/15/2021 | 12 | | NOTICE *Supplementary Facts* by CENTER FOR BIOLOGICAL DIVERSITY, CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, FRIENDS OF THE EARTH (Attachments: # 1 Declaration)(Snape, William) (Entered: 12/15/2021) |
| 02/11/2022 | 13 | | ORDER granting Defendant's 8 Motion to Dismiss. See full Order and accompanying Memorandum Opinion for details. Signed by Judge Christopher R. Cooper on 2/11/2022. (lccrc1) (Entered: 02/11/2022) |

| 02/11/2022 | 14 | | MEMORANDUM OPINION re: 13 ORDER granting Defendant's 8 Motion to Dismiss. See full Memorandum Opinion for details. Signed by Judge Christopher R. Cooper on 2/11/2022. (lccrc1) (Entered: 02/11/2022) |
|---|---|---|---|
| 04/06/2022 | 15 | | NOTICE OF APPEAL TO DC CIRCUIT COURT by CENTER FOR BIOLOGICAL DIVERSITY, CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, FRIENDS OF THE EARTH. Filing fee $ 505, receipt number ADCDC−9153899. Fee Status: Fee Paid. Parties have been notified. (Snape, William) (Main Document 15 replaced on 4/6/2022) (znmw). (Entered: 04/06/2022) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Center for Biological Diversity et al.
_____
                        Plaintiff

              vs.                           Civil Action No. 21-1491 (CRC)
                                                             _____

U.S. Development Finance Corporation
_____
                        Defendant

# NOTICE OF APPEAL

Notice is hereby given this  6th        day of  April                    , 20 22    , that

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from

the judgment of this Court entered on the   11th             day of  February              , 20 22

in  favor of   Defendant U.S. Development Finance Corporation

against said   Plaintiffs Center for Biological Diversity, Friends of the Earth, Center for International Environmental Law

                              /s/ William J. Snape, III (DC Bar No. 455266)
                              _____
                                    Attorney or Pro Se Litigant

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil action must be filed within 30 days after the date of entry of judgment or 60 days if the United States or officer or agency is a party)

**CLERK**        Please mail copies of the above Notice of Appeal to the following at the addresses indicated:

James C. Luh
U.S. Department of Justice
1100 L Street, NW
Washington, D.C. 20530

Phone:  202-514-4938

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** et al., | |
| Plaintiffs, | |
| v. | Case No. 21-cv-1491 (CRC) |
| **U.S. INTERNATIONAL DEVELOPMENT FINANCE CORP.,** | |
| Defendant. | |

**<u>ORDER</u>**

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that [8] Defendants' Motion to Dismiss is GRANTED.

This is a final appealable order.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>February 11, 2022</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** et al., <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. INTERNATIONAL DEVELOPMENT FINANCE CORP.,** <br><br> Defendant. | Case No. 21-cv-1491 (CRC) |

## <u>MEMORANDUM OPINION</u>

The Government in the Sunshine Act ("Sunshine Act") requires that every meeting of a covered "agency" be conducted in public, with a handful of exceptions.  5 U.S.C. § 552b.  In April 2020, the U.S. International Development Finance Corporation ("DFC") published a rule, without notice and comment, exempting itself from the Sunshine Act and has since declined to notice and hold public meetings as the Act would require.  <u>See</u> Sunshine Act Exemption Regulation, 85 Fed. Reg. 20,423 (Apr. 13, 2020) (the "Sunshine Act Rule").  Plaintiffs, three non-profit organizations that monitor the environmental effects of DFC projects, have challenged the rule under the Administrative Procedure Act ("APA") and the Sunshine Act itself.

Plaintiffs  seek an order declaring the DFC subject to the Sunshine Act and enjoining the agency from conducting further meetings out of the public eye.  The DFC has moved to dismiss plaintiffs' complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  Finding that plaintiffs have established informational standing but that the DFC does not meet the Sunshine Act's definition of an "agency," the Court will grant the DFC's motion to dismiss under Rule 12(b)(6).

## I.   Background

### A.  The Sunshine Act

"Congress enacted the Sunshine Act to open the deliberations of multi-member federal agencies to public view." Common Cause v. Nuclear Reg. Comm'n, 674 F.2d 921, 928 (D.C. Cir. 1982).  The Act is "founded on the proposition that the government should conduct the public's business in public."  Compl. ¶ 24 (citing S. Rep. No. 354, 94th Cong., 1st Sess. 1; Conf. Rep. No. 1178, 94th Cong., 2d Sess. 9 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin. News 2183, 2245).  The Act thus requires covered agencies to hold meetings "open to public observation," with certain exceptions.  5 U.S.C. § 552b(b).  They must also publicly announce the time, place, and subject matter of meetings at least a week in advance, id. § 552b(e)(1), and prepare a complete transcript or electronic recording of meetings that are closed for any reason, id. § 552b(f).  The term "agency" in the Sunshine Act means "any agency . . . headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate."  Id. § 552b(a)(1).

### B.  History of OPIC and the DFC

The DFC was created by statute in 2018.  See Better Utilization of Investments Leading to Development Act, P.L. 115-254, 132 Stat. 3485 (Oct. 5, 2018) (codified at 22 U.S.C. § 9612) (the "BUILD Act").  Its mission is to facilitate private financing of international development projects in poorer countries, consistent with the foreign policy objectives of the United States.  Compl. ¶¶ 15, 16.

The DFC's predecessor agency was the Overseas Private Investment Corporation ("OPIC").  OPIC met the definition of an "agency" under the Sunshine Act because a majority (eight) of its fifteen board members were "appointed by the President of the United States, by

and with the advice and consent of the Senate." 22 U.S.C. § 2193(b) (repealed).  The President

of OPIC was the ninth board member, and the remaining six members were other United States

officers, such as the United States Trade Representative.  Id. § 2193(c).  Accordingly, OPIC was

subject to the Sunshine Act and complied with it until OPIC was replaced with the DFC by

statute.  See, e.g., 84 Fed. Reg. 6839–40 (Feb. 28, 2019) (Notice of OPIC Sunshine Act

meeting).

      The DFC has a nine-member board of directors.  It includes: (a) the Chief Executive

Officer of the DFC; (b) four officers from other government agencies; and (c) four other

individuals appointed directly to the board by the President, with the advice and consent of the

Senate.  22 U.S.C. § 9613(b)(2)(A).  The four officers from other agencies are: the Secretary of

State, the Administrator of the United States Agency for International Development, the

Secretary of the Treasury, and the Secretary of Commerce (or their respective designees).  Id.

§ 9613(b)(2)(B).

      The BUILD Act also provides that the Chief Executive Officer of the DFC be nominated

by the President with the advice and consent of the Senate.  Id. § 9613(d)(1).  The CEO is

"responsible for the management of the Corporation and shall exercise the powers and discharge

the duties of the Corporation subject to the bylaws, rules, regulations, and procedures established

by the Board," of which the CEO is a part.  Id. § 9613(d)(2); see Compl. ¶ 11–13.

      On April 13, 2020, DFC published a rule exempting itself from the Sunshine Act

because, in its view, it did not meet the Act's definition of an "agency."  Compl. ¶ 42.  The DFC

did not issue a proposed rule prior to publishing the final rule, and the rule did not go through

APA notice and comment procedures.  Compl. ¶ 43.  Since that change, the DFC has conducted

meetings without following the requirements of the Sunshine Act.  Compl. ¶¶ 46–47, 57.

C.  Plaintiffs' Participation in OPIC and DFC Meetings

Plaintiffs are three non-profit organizations, the Center for Biological Diversity ("CBD" or "the Center"), Friends of the Earth ("FOE"), and the Center for International Environmental Law ("CIEL").  All three groups monitor the environment and endangered species, both in the United States and abroad.  They also engage in advocacy and educational outreach related to their goals of protecting the environment and maintaining biological diversity.  Compl. ¶¶ 5–7.

According to several declarations submitted by plaintiffs, prior to the DFC's creation in 2018, staff and members of all three attended OPIC meetings and engaged with OPIC in connection with its overseas projects.  Compl. ¶¶ 5–7; see also Uhlemann Decl., ECF No. 7-1; DeAngelis Decl., ECF No. 7-2; Norlen Decl., ECF No. 7-3; Zendejas Decl., ECF No. 7-4.[1]  This participation furthered plaintiffs' work monitoring the potential impact of OPIC projects on federally endangered species.  Compl. ¶¶ 5–7.  Plaintiffs say that access to OPIC meetings and records pursuant to the Sunshine Act facilitated this participation.  For example, when OPIC existed, staff from the Center for Biological Diversity "relied on Federal Register notices of meetings, minutes of meetings, transcripts of meetings, and records of meetings."  Uhlemann Decl. ¶ 7.  This information "allowed Center staff to monitor the workings of OPIC and participate more effectively in the agency's decision-making process."  Id.  The Center submitted comments on OPIC projects in 2017 and 2018.  Id. ¶¶ 8–9.  Similarly, staff from Friends of the Earth presented at public OPIC meetings throughout 2017 and 2018.  DeAngelis Decl. ¶¶ 4–5.

_____

[1] The Court notes here that the government objects to its consideration of these declarations at this stage.  See Mot. to Dismiss at 9–10, ECF No. 8.  For the reasons explained below, the Court will consider the content of the declarations in deciding defendant's motion to dismiss under Rule 12(b)(1).

Plaintiffs allege that the DFC's Sunshine Act exemption deprives them of timely information about the agency's projects and activities.  Compl. ¶¶ 5–7.  They insist that the exemption has already hampered their ability to interact with the DFC.  For example, plaintiffs allege that on September 9, 2020, the DFC held a private board meeting at which the board voted to approve funds for the Rovuma Liquified Natural Gas project in northern Mozambique.  Norlen Decl. ¶ 7.  Doug Norlen, Director of FOE's Economic Policy Program, attests that he has tracked this project since 2015, but was unable to participate in the meeting or provide comments because it was not noticed in the federal register in advance—Mr. Norlen only learned of the meeting on the day it was scheduled to occur.  Id.; see also, e.g., Zendejas Decl. ¶ 18 (lack of public access has impaired CIEL's ability to track the Alto Maipo Project in Chile); Supp. DeAngelis Decl. ¶¶ 8–9, ECF No. 12-1 (noting approval of two projects in India and Sierra Leone at a private DFC Board meeting held on December 8, 2021).

## II.   Legal Standards

### A.   Motion to Dismiss

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court "must treat the complaint's factual allegations as true, and must grant plaintiff the 'benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).

A motion under Rule 12(b)(1) "'presents a threshold challenge to a court's jurisdiction.'"  Ctr. for Biological Diversity v. Jackson, 815 F. Supp. 2d 85, 89 (D.D.C. 2011) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  The plaintiff "bears the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction over her claims."

5

Schmidt v. U.S. Capitol Police Bd., 826 F. Supp. 2d 59, 69 (D.D.C. 2011) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  When reviewing a challenge under Rule 12(b)(1), "the court may consider documents outside the pleadings to assure itself that it has jurisdiction." Sandoval v. U.S. Dep't of Justice, 322 F. Supp. 3d 101, 104 (D.D.C. 2018) (Cooper, J.).

One core aspect of subject matter jurisdiction is standing—i.e., that the plaintiff has suffered an "injury in fact" that is (1) "actual or imminent," (2) "fairly traceable to the challenged action of the defendant," and (3) capable of being "redressed by a favorable decision." Lujan, 504 U.S. at 560–61.  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Id.  As relevant here, plaintiff can establish an informational injury sufficient for standing by demonstrating a denial of access to information "where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt . . . that the information would help them." Campaign Legal Ctr. & Democracy 21 v. FEC, 952 F.3d 352, 356 (D.C. Cir. 2020) (internal quotation marks omitted).

In contrast to a motion under Rule 12(b)(1), "[a] Rule 12(b)(6) motion tests the legal sufficiency of a complaint: dismissal is inappropriate unless the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal quotation marks omitted).  Under Rule 12(b)(6), "a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint[,] and matters about which the Court may take judicial notice.'" Sandoval, 322 F. Supp. 3d at 104 (quoting Gustave–Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

### III.  Analysis

   A.  <u>Standing</u>

   *1.  The Court Will Consider Plaintiffs' Declarations*

Before turning to standing, the Court must first tackle the government's objection to considering plaintiffs' declarations.  As noted above, plaintiffs filed four declarations from staff members at their organizations attesting to their past participation before OPIC and describing how the DFC's failure to notice meetings has impaired their ability to monitor various projects and participate in the meetings as they used to do.  <u>See</u> Uhlemann Decl.; DeAngelis Decl.; Norlen Decl.; Zendejas Decl.  Plaintiffs first filed these declarations as stand-alone documents, then refiled them as attachments to their memorandum in opposition to DFC's motion to dismiss. <u>See</u> Mem. in Opp'n, ECF No. 10, Exs. 1-12.

The government suggests that because its Rule 12(b)(1) motion raises a "facial" challenge to jurisdiction, the Court may not look beyond the four corners of the complaint to consider the declarations.  Mot. to Dismiss at 9, ECF No. 8.  The government separately argues that the Court should ignore the declarations because they "were not attached to any proper filing," and plaintiffs have not amended their complaint to incorporate the declarations or their contents.  <u>Id.</u>  The Court is not persuaded by either argument.

 First, it is well established that the Court may look to materials beyond the pleadings when considering a 12(b)(1) motion to assure itself of jurisdiction, including additional declarations or affidavits provided by a plaintiff to support standing.  "As the D.C. Circuit has explained, in resolving a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court is not limited to the allegations contained in the complaint but may consider materials outside the pleadings."  <u>Marsh v. Johnson</u>, 263 F. Supp. 2d 49, 54 (D.D.C. 2003).

Because a 12(b)(1) challenge goes to the court's subject matter jurisdiction, "it has been long accepted [in 12(b)(1) proceedings] that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on [its] authority to entertain the case." Haase, 835 F.2d at 906 (internal quotation marks omitted); see also Warth v. Seldin, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing . . . it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."); Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

The Court is unaware of any precedent supporting the idea that a 12(b)(1) motion must be limited to the pleadings, and fellow courts in this district routinely consider associated affidavits or exhibits when deciding a motion under Rule 12(b)(1). See, e.g., Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[A] document attached to the motion papers may be considered without converting the [12(b)(1)] motion to one for summary judgment."); Marsh, 263 F. Supp. 2d at 54 (granting leave to file two supplemental declarations in response to 12(b)(1) motion); Dvorak v. U.S. Dep't of Homeland Sec., No. 18-CV-1941, 2019 WL 1491743, at *1 (D.D.C. Apr. 3, 2019) (relying on declarations to find the action moot and dismiss the case); Ctr. for Biological Diversity v. Bernhardt, 442 F. Supp. 3d 97, 103–04 (D.D.C. 2020) (quoting Warth, 422 U.S. at 501).

The Court is equally unconvinced by the government's contention that its choice to bring a "facial" challenge to standing somehow limits the Court's ability to consider material outside the pleadings. The government relies on two cases that distinguish between so-called "facial"

and "factual" challenges to jurisdiction, Phoenix Consulting v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000), and Feldman v. Fed. Deposit Ins. Corp., 879 F.3d 347, 351 (D.C. Cir. 2018). Neither case says a Court *cannot* consider declarations or affidavits outside the pleadings when deciding a Rule 12(b)(1) motion.  Rather, the distinction drawn in these cases concerns how the Court should treat the plaintiff's alleged factual basis for standing.  In a facial challenge, the defendant simply asserts that the facts as pleaded are not sufficient for standing.  When presented with evidence that contradicts the plaintiff's alleged facts, however, the Court can go beyond the pleadings to resolve a disputed fact *against* the plaintiff.  As the D.C. Circuit explained in Feldman: "Where a motion to dismiss a complaint present[s] a dispute over the factual basis of the court's subject matter jurisdiction . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss."  Feldman, 879 F.3d at 351 (internal quotation marks omitted); see also Phoenix Consulting, 216 F.3d at 40.

Neither case says that on a facial challenge the Court must rely solely on the complaint and cannot consider materials outside the pleadings supplied by the plaintiff.  And at least one judge in this district has said the exact opposite: "The court may look beyond the allegations contained in the complaint to decide a facial challenge, as long as it still accepts the factual allegations in the complaint as true."  Lindsey v. United States, 448 F. Supp. 2d 37, 43 (D.D.C. 2006) (internal quotation marks omitted).

As for the government's second argument, the Court sees no obvious impediment to considering jurisdictional declarations filed as stand-alone documents.  But, plaintiffs re-filed their declarations as attachments to their opposition brief in any event.  This is certainly proper. Vanover, 77 F. Supp. 2d at 98 ("[A] document attached to the motion papers may be considered

without converting the [12(b)(1)] motion to one for summary judgment."). Seeing no procedural

bar to considering the declarations, the Court will do so.

### 2.  *Plaintiffs Have Alleged an Informational Injury*

To establish informational injury, a "plaintiff [must] show that (1) it has been deprived of

information that, on its interpretation, a statute requires the government or a third party to

disclose to it, and (2) it suffers, by being denied access to that information, the type of harm

Congress sought to prevent by requiring disclosure." Elec. Priv. Info. Ctr. v. Presidential

Advisory Comm'n on Election Integrity, 878 F.3d 371, 378 (D.C. Cir. 2017) ("EPIC").

Plaintiffs contend that they have standing because they have been "denied . . . notice,

information, and materials" that the DFC would be required to make public under the Sunshine

Act.  Opp. at 7.  Specifically, plaintiffs have identified several DFC meetings that were held

without Sunshine Act notice, which would have included the date and time of the meeting and

the agenda.  See, e.g., Compl. ¶ 57 (December 1, 2020 and March 9, 2021 meetings); DeAngelis

Decl. ¶ 8 (September 9, 2020 meeting).  They have also noted specific deliberations relevant to

their work that took place at these meetings.  DeAngelis Decl. ¶ 8 (noting board vote on the

Rovuma LNG project in Mozambique); Supp. DeAngelis Decl. ¶¶ 8–9 (noting that a $250

million loan for a vehicle finance program in India was approved at the December 8, 2021

meeting).  Plaintiffs have further averred that they were unable to attend the meetings due to the

deficient notice.  Id.  And, on plaintiffs' read, the DFC is subject to the Sunshine Act.

Plaintiffs' allegations and averments are more than enough to establish informational

standing.  Plaintiffs have alleged a right under the Sunshine Act to obtain the information they

seek, a specific denial of that right by the agency, and a resulting injury flowing from the denial.

That suffices.  See Elec. Power Supply Ass'n v. F.E.R.C., 391 F.3d 1255, 1262 (D.C. Cir. 2004)

(finding that a power company association had standing to challenge a FERC rule modifying the

agency's Sunshine Act regulations because the association and its members regularly

participated in FERC hearings and sought to enforce a procedural right under the Sunshine Act);

Waterkeeper Alliance v. Env't Prot. Agency, 853 F.3d 527, 533 (D.C. Cir. 2017) (finding

informational standing where agency rule curtailing CERCLA reporting requirements deprived

environmental organizations of information which they previously had a statutory right to

access).

      The government does not contest plaintiffs' representations that they have been deprived

of information that would be required in a Sunshine Act notice and that the lack of such

information has impeded their organizational goals.  Its only rejoinder to the plaintiffs'

informational standing argument is that "plaintiffs have not alleged that they requested and were

denied access to government records or meetings."  Mot. at 8.  In the government's view,

plaintiffs must ask to attend specific DFC meetings, or request the minutes and transcript after

the fact, and have their requests denied in order to establish standing.

      This argument falls far short of the mark.  The elements of informational standing laid

out above do not require plaintiffs to lodge a specific request for information; they only have to

allege a deprivation of information required to be disclosed by statute, which plaintiffs have done

here.  Consistent with that requirement, the D.C. Circuit has upheld informational standing in

similar situations without requiring an advance information request.  Elec. Power Supply Ass'n.,

391 F.3d at 1262; Waterkeeper, 853 F.3d at 533; see also, e.g., Friends of Animals v. Jewell, 824

F.3d 1033, 1041 (D.C. Cir. 2016) (non-profit organization had informational standing under

§ 10(c) of the Endangered Species Act, which required the Secretary of the Interior to publish

notice of each application for an exemption or permit under the Act); United to Protect

Democracy, 288 F. Supp. 3d at 107 (voting rights group had standing to challenge lack of

disclosure under the Paperwork Reduction Act, which required notice in the federal register

before the government made a request for voter data).

 The government cites two cases involving the Freedom of Information Act ("FOIA") for

the existence of an affirmative-request requirement for informational standing, but neither

imposes that additional hurdle in all cases.  In the first case, Prisology, Inc. v. Fed. Bureau of

Prisons, 852 F.3d 1114 (D.C. Cir. 2017); Mot. at 8, a criminal justice reform organization

challenged the Bureau of Prisons' failure to electronically disclose numerous types of reports and

other records.  The plaintiff claimed an informational injury under FOIA.  The D.C. Circuit

rejected standing, finding that the plaintiff had suffered no injury because it did not lodge a

request for the challenged records before bringing suit as FOIA requires, and therefore had no

legal right to the disclosures it sought.  Prisology, 852 F.3d at 1117.  By contrast, plaintiffs here

would have a legal right to disclosure under the Sunshine Act should the Act apply to the DFC.

 The government's second case, Union of Concerned Scientists v. U. S. Dep't of Energy,

998 F.3d 926 (D.C. Cir. 2021), presented an APA challenge to a Department of Energy rule

exempting certain information from FOIA.  Again rejecting standing, the Circuit held that

because the plaintiff had not been denied specific records after making a FOIA request, its claim

of injury based on how the agency might exercise its discretion to response to future FOIA

requests was unduly speculative.  Id. at 930.  But one need not speculate about plaintiffs'

claimed injury here.  As noted above, plaintiffs have identified specific information that they

claim the DFC was required to disclose under the Sunshine Act.

 The other requirements for informational standing are also met.  The Sunshine Act is an

open-government law.  Its very goal is "to open the deliberations of . . . federal agencies to

public view." Compl. ¶ 24 (quoting <u>Common Cause</u>, 674 F.2d at 928. Plaintiffs have

established that, by being denied advance notice of the DFC's meetings, they have suffered

precisely "the type of harm Congress sought to prevent by requiring disclosure." <u>EPIC</u>, 878 F.3d

at 378.

Plaintiffs' claimed injury is also sufficiently imminent and concrete. Like the plaintiffs in

<u>Friends of Animals</u>, plaintiffs here allege that the information they seek would help them

"meaningfully participate" in the agency's process and "engage in related advocacy efforts."

<u>Friends of Animals</u>, 824 F.3d at 1041. They have provided specific examples of how they

participated in open meetings in the past, and how the lack of notice under the Sunshine Act

makes it more difficult for them to do so now. <u>E.g.</u>, Norlen Decl. ¶ 7. They have further

identified specific DFC meetings to which they were effectively denied access due to deficient

Sunshine Act notice. "Given [plaintiffs'] goals and organizational activities, there is no reason to

doubt [their] standing here." <u>Friends of Animals</u>, 824 F.3d at 1041.

For those reasons, the Court finds that plaintiffs have standing and the Court has subject

matter jurisdiction. It will therefore proceed to consider the merits of the motion to dismiss.

B. <u>The Merits</u>

Plaintiffs bring three claims against the DFC. The first is that the agency violated the

APA by failing to put the Sunshine Act Rule through notice and comment procedures. Compl.

¶¶ 58–61. Plaintiffs bring their second and third claims under the both the APA and the

Sunshine Act. The second alleges that the DFC's Sunshine Act Rule is "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 552b(a), (b); 706(2).

The third alleges that the DFC's failure to promulgate Sunshine Act regulations constitutes

agency action "unlawfully withheld and unreasonably delayed."  Id. §§ 552b(b), (j), (k); 706(1).

Compl. ¶¶ 61–71.  The Court will move in order.

      1.   *APA Claim*

      Plaintiffs allege in their first claim that the DFC violated the APA by failing to subject

the Sunshine Act Rule to notice and comment before issuing it.  Compl. ¶¶ 58–61; see also 5

U.S.C. § 553.  The government's response is threefold: *first*, that plaintiffs cannot bring an APA

claim because the Sunshine Act already provides an adequate remedy, Mot. at 11, *second*, that

notice and comment was not required because the Sunshine Act Rule is not a "legislative" rule,

Mot. at 12, and *third*, that even if notice and comment was required, the DFC's failure to provide

it was harmless, Mot. at 14.

      An agency is generally required to put a rule through the APA notice and comment

process before issuing it.  5 U.S.C. § 553.  The APA provides three exemptions from this

requirement, for: "(1) interpretative rules; (2) general statements of policy; and (3) rules of

agency organization, procedure, or practice."  Mendoza v. Perez, 754 F.3d 1002, 1020–21 (D.C.

Cir. 2014); see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec., 653 F.3d 1, 5 (D.C.

Cir. 2011).  These exceptions are to be "narrowly construed and only reluctantly countenanced."

Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1044 (D.C. Cir. 1987).

      The D.C. Circuit has explained that the "critical feature" of a procedural rule is that it

covers "agency actions that do not themselves alter the rights or interests of parties, although it

may alter the manner in which parties present themselves or their viewpoints to the agency."

Bowen, 834 F.2d at 1047 (quoting Batterton v. Marshall, 648 F.2d 694, 703 (D.C. Cir. 1980));

see also Nat'l Min. Ass'n v. McCarthy, 758 F.3d 243, 250 (D.C. Cir. 2014).  In contrast, a

"legislative rule" that must go through notice and comment "is one that has legal effect or,

alternately, one that an agency promulgates with the intent to exercise its delegated legislative power by speaking with the force of law." Nat. Res. Def. Council v. Wheeler, 955 F.3d 68, 83 (D.C. Cir. 2020) (internal quotation marks omitted). That being said, "[t]he distinction between those agency pronouncements subject to APA notice-and-comment requirements and those that are exempt has been aptly described as 'enshrouded in considerable smog.'" Am. Min. Cong. v. Mine Safety & Health Admin., 995 F.2d 1106, 1108 (D.C. Cir. 1993); see also JEM Broad. Co. v. F.C.C., 22 F.3d 320, 326 (D.C. Cir. 1994) ("[I]n applying this provision we have struggled with the distinction between 'substantive' and 'procedural' rules.").

Plaintiffs argue the Sunshine Act Rule "does much more than 'merely alter the manner in which the parties present themselves or their viewpoints to the agency.'" Opp. at 21 (citing McCarthy, 758 F.3d at 250). Rather, plaintiffs say the rule "had the effect of altering the legal rights of the public," making it a legislative rule. Opp. at 20. The government rejoins that the rule only modifies "how the agency will conduct proceedings" and thus does not affect the plaintiffs' legal rights. Mot. at 13.

The Court finds neither of the parties' arguments particularly elucidating, because in some sense, the Sunshine Act Rule meets both definitions. In the most literal sense, the rule does "alter the rights" of the public—the public had a statutory right to receive notice and attend DFC meetings before the rule was issued and the rule extinguished that right. And this wholesale elimination of procedural rights under the Sunshine Act is more significant than the more interpretative and discretionary administrative changes at issue in the cases cited by the government. See, e.g., Pub. Citizen v. Dep't of State, 276 F.3d 634, 641 (D.C. Cir. 2002) (rule limiting cut-off date for searches under FOIA requests was procedural). On the other hand, the rule clearly deals with how "the parties present themselves or their viewpoints to the agency,"

15

the hallmark of a procedural rule.  McCarthy, 758 F.3d at 250 (internal quotation marks omitted).  Neither side presents caselaw that squarely answers whether a rule exempting an agency from the Sunshine Act falls on one side of this line or the other.

Rather than wade into these uncharted waters, the Court will resolve this claim on the basis of the government's third argument: that even if notice and comment was required, the DFC's failure to provide it was harmless.

"'In administrative law, as in federal civil and criminal litigation, there is a harmless error rule.'"  Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 659–60 (2007) (quoting PDK Labs. Inc. v. U. S. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C. Cir. 2004)).  The D.C. Circuit has established a high bar for harmlessness in the APA context: "[A]n utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure."  Sprint Corp. v. F.C.C., 315 F.3d 369, 376 (D.C. Cir. 2003) (internal quotation marks omitted).

For the reasons explained below, the Court agrees with the DFC that it does not meet the definition of an 'agency' in the Sunshine Act.  This conclusion is compelled by the language of the two statutes at issue and binding D.C. Circuit precedent.  See 5 U.S.C. § 552b(a)(1) (defining "agency" subject to the Act); 22 U.S.C. § 9613(b)(2) (setting forth the composition of DFC's board); see also Symons v. Chrysler Corp. Loan Guarantee Bd., 670 F.2d 238, 240–41 (D.C. Cir. 1981).  The DFC's conclusion was essentially preordained by Congress—Congress wrote the definition of 'agency' in the Sunshine Act and the provisions of the BUILD Act creating the DFC.  The Court is not convinced that the information plaintiffs claim they would have shared in the notice and comment process—"as to the importance of public meetings, like those held by OPIC,"  Opp. at 23—could have had any impact on the legal conclusion the DFC made.  In this

16

instance, where all the agency *can* do is rescind an outdated rule, failure to go through notice and comment was harmless.  See Beverly Health & Rehab. Servs., Inc. v. Thompson, 223 F. Supp. 2d 73, 105 (D.D.C. 2002) ("[W]here Congress enacts a new statute or amends an existing one, administrative regulations may be rendered unnecessary or obsolete and the prior regulations need not be repealed by notice and comment."); see also Ass'n of Am. Physicians & Surgeons v. Sebelius, 746 F.3d 468, 472 (D.C. Cir. 2014) (when "the statute itself" foreclosed the plaintiffs' position, "all the procedure in the world" could not lead the agency to a different conclusion).

Accordingly, DFC's failure to provide notice and comment was harmless and the Court will therefore grant DFC's motion to dismiss as to Claim One for failure to state a claim.

### 2. *Sunshine Act Claims*

As explained above, if the DFC is subject to the Sunshine Act, the Act provides a remedy for the DFC's failure to promulgate Sunshine Act regulations.  Claim Two alleges the Sunshine Act Rule is contrary to law under the APA.  Claim Three alleges the DFC failed to promulgate rules under the Sunshine Act.  Although Claim Two is styled under the APA, both claims ask for essentially the same things—that the Court find the DFC covered by the Sunshine Act, that it vacate the rule as contrary to law, and that it order the DFC to promulgate Sunshine Act rules. The Court will therefore consider the claims in tandem.

To be an "agency" subject to the Sunshine Act, the agency must be "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President and with the advice and consent of the Senate."  5 U.S.C. § 552b(a)(1).  The DFC board of directors has nine members.  Four members are appointed directly to the board by the President.  22 U.S.C. § 9613(b)(2)(A)(iii).  Four other members are officers from other agencies—the Secretary of State, the Administrator of USAID, the Secretary

17

of the Treasury, and the Secretary of Commerce (or their designees).  Id. § 9613(b)(2)(B)(i).  The final board member is the CEO of the DFC.  Id. § 9613(b)(2)(A)(i).

The parties agree that the four board members appointed directly to the Board are "appointed to such position" and count for Sunshine Act purposes.  See Mot. at 15; Compl. ¶ 11.  They also agree that the four officials from other agencies serve by virtue of their separate appointments, and therefore do not count for Sunshine Act purposes.  Opp. at 27; Mot. at 16.  The only dispute is whether or not the CEO of the DFC is appointed to the DFC's board "by the President and with the advice and consent of the Senate."  See Opp. at 27.

Forty years ago, in Symons v. Chrysler Corp. Loan Guarantee Bd., the D.C. Circuit considered whether the Chrysler Corporation Loan Guarantee Board was an "agency" subject to the Sunshine Act.  Symons, 670 F.2d 238, 240–41 (D.C. Cir. 1981).  The members of that board all served by virtue of their appointment to other positions: "The Secretary of the Treasury chair[ed] the Board; the Chairman of the Board of Governors of the Federal Reserve System and the Comptroller General of the United States [were] the other voting members, while the Secretaries of Labor and Transportation serve[d] as nonvoting members of the Board."  Id. at 240.  Because all the board members served "by virtue of the other offices they hold," the Circuit held they were not "appointed to such position"—i.e., the board position—and therefore the board was not an agency subject to the Sunshine Act.  Id. at 241, 245.

The government maintains that this reasoning applies to the CEO of the DFC with equal force.  Mot. at 16.  In its view, the DFC's CEO does not count towards the Sunshine Act's majority requirement because the CEO is not appointed to his board position, but instead serves on the board by virtue of his status as the CEO.  Id.  Plaintiffs attempt to distinguish Symons in two respects.  First, they point out that unlike the statute that created the board at issue in

18

Symons, the DFC's organic statute does not group the CEO in the same roman numeral with the four other ex-officio members.  Second, they posit that the DFC CEO should be treated differently than the ex-officio board members in Symons (and those here) "because the CEO is being nominated and confirmed to the agency's board only because he is CEO of that exact same agency."  Opp. at 27, 28.

The distinctions drawn by plaintiffs do not affect Symons' application to this case.  The key framing in Symons was whether the board members were appointed *to the Board itself* by the President or, rather, served on the board by virtue of their appointment *to another position*.  Symons, 670 F.2d at 241.  This dichotomy applies here even though the DFC's CEO is not listed in the same paragraph of the governing statute as the other ex-officio members.  See 22 U.S.C. § 9613(b).  As to plaintiff's second point, while the CEO of the DFC is not external to his own agency, he still serves on the Board by virtue of his appointment to *another position*—that is, the position of CEO.  See id. § 9613(d)(1) ("There shall be in the Corporation a Chief Executive Officer, who shall be appointed by the President, by and with the advice and consent of the Senate, and who shall serve at the pleasure of the President.").  Symons' reasoning and resulting holding therefore remain binding on this Court.

Plaintiffs also highlight the many similarities between OPIC's organic statute, 22 U.S.C. § 2193(c), and the DFC statute, as evidence that Congress did not intend to exempt the DFC from the Sunshine Act.  For example, neither statute explicitly mentioned the Sunshine Act, and the OPIC chief executive also served on the OPIC board.  See 22 U.S.C. § 2193(c) (repealed).  But plaintiffs elide one crucial difference: a majority of the OPIC directors (eight out of fifteen) were "appointed by the President of the United States, by and with the advice and consent of the Senate," and could "not be officials or employees of the Government of the United States."  Id.

19

§ 2193(b) (repealed).  By contrast, only a minority of the DFC's directors (four out of nine) are
so appointed.

Plaintiffs further argue that there is no evidence from the BUILD Act's legislative history
that Congress intended to change the DFC's Sunshine Act status when it created the agency in
place of OPIC.  See Uhlemann Decl. ¶ 5–7.  The Court has reviewed the congressional record
and the committee report on the bill.  As plaintiffs note, there seems to be no mention of the
Sunshine Act in the legislative history, or any indication that the sponsors of the bill intended to
exempt the DFC from the Sunshine Act.  See, e.g., 164 Cong. Rec. 120, H6320-6333 (July 17,
2018); H.R. Rep. No. 115-814 (2018) (Conf. Rep.).  Nor, on the other hand, is there any apparent
indication that Congress intended that the DFC remain covered despite the change to the board's
composition.[2]  The Court can infer little from this silence given the clarity of the statutory text.
See Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1143, 200 L. Ed. 2d 433 (2018) ("If the
text is clear, it needs no repetition in the legislative history; and if the text is ambiguous, silence
in the legislative history cannot lend any clarity.")

At bottom, the plain text of the Sunshine Act provides that the statute applies only if a
majority of an agency's board members are "appointed *to such position* by the President with the
advice and consent of the Senate."  5 U.S.C. § 552b(a)(1).  OPIC's board had eight such

---

[2] As far as the Court can tell, the only rationale articulated in the legislative history for
the reorganization of DFC's board was to ensure representation of the United States' national
security and diplomacy interests on the board.  See Hearing before the H. Comm. on Foreign
Affairs, 115th Cong. 4–5 (2018) (statement of Ray Washburne, President, CEO, OPIC) ("The
[DFC] will have better policy alignment and strong links to State and USAID to ensure its
transactions align with U.S. foreign policy."); An Update on American Diplomacy to Advance
Our National Security Strategy: Hearing before the S. Comm. on Foreign Relations, 115th Cong.
87–88 (2018) (statement of Mike Pompeo, Secretary of State) ("As board chair, I would commit
to make [sic] our foreign policy priorities including national security, commercial and
development objectives central to the mission of the [DFC]".).

members out of fifteen, whereas the DFC's board now has only four out of nine.  And Congress gave no indication one way or the other as to how it wished the DFC to be treated for Sunshine Act purposes.  Therefore, the Sunshine Act does not apply to the DFC.

*   *   *

A final thought.  As plaintiffs emphasize, the Sunshine Act is "founded on the proposition that the government should conduct the people's business in public."  Opp. at 3.  This observation echoes Judge Wald's dissent four decades ago in Symons.  Symons, 670 F.2d at 246-48 (Wald, J., dissenting).  Given the Act's foundational purpose, she found the statute's broad definition of "agency" capacious enough to accommodate a reading that would treat ex-officio board members towards a Sunshine Act majority.  Id. at 249.  The panel majority disagreed, and the Court is bound to apply its reasoning here.  Yet today's Circuit might find it appropriate to reexamine Judge Wald's analysis in light of the differences between the DFC CEO's board status and that of the ex-officio directors in Symons.  While those differences have not carried the day in this Court, the Circuit may see more leeway to revisit the application of its precedent in the first instance.

### IV.  Conclusion

For the foregoing reasons, the Court will GRANT Defendant's Motion to Dismiss.  A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  February 11, 2022